IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MANDY POWRZANAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:17-cv-975-TMP |
| ) | |
| JONES UTILITY AND ) | |
| CONTRACTING CO., INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

On November 6, 2018, the plaintiff filed a second motion styled "Motion for a Restraining Order." (Doc. 112). Similar to her first such motion, the current motion alleges that the defendant's father and owner of the defendant company, Richard Jones, has attempted to intimidate the plaintiff by driving his vehicle on Highway 31 in Gardendale, Alabama, near a location where he knew she would be. It alleges that Jones acts erratically and that the plaintiff is afraid of him. The motion seeks a restraining order from the court, pursuant to 42 U.S.C. §§ 12203(c), 12117, 2000e-5, or Rule 65 of the Federal Rules of Civil Procedure, to stop Richard Jones from attempting to intimidate or harm the plaintiff.

Findings of Fact

After receiving the defendant's response to the motion on November 12, 2018 (Doc. 115), the court conducted an evidentiary hearing on the motion on December 11, 2018, hearing the testimony of the plaintiff, the plaintiff's husband, Mr. Jones, and Mr. Jones's wife. The evidence generally established that at approximately 5:19 p.m. on Monday, November 5, the plaintiff was leaving her lawyer's office, which fronts Highway 31 in Gardendale. She was looking to turn right out of the office driveway onto Highway 31, which is a heavily-traveled, main thoroughfare through Gardendale. Very soon after she turned right out of the driveway and into traffic, a white pickup truck also turned onto Highway 31 immediately in front of her from a location somewhere north of her lawyer's office.[1] Although the plaintiff could not see the passengers in the truck to identify them, she did see there were silhouettes of two people in it. Being immediately behind the truck, the plaintiff noticed it had a "25" tag, signifying it was registered in Cullman County, where Mr. and Mrs. Jones live. Using her cellphone, the plaintiff took several photographs of the truck ahead of her until it moved over into the left turn lane and turned off Highway 31 onto Mt. Olive Boulevard in the direction of Interstate 65 North toward Cullman County. The plaintiff then

---

[1] There is a conflict in the testimony about where the pickup truck came from. The plaintiff testified that the truck turn out of a gravel driveway about 20 to 30 feet north of the driveway to her lawyer's office. Mr. and Mrs. Jones testified, however, that they were not in the gravel driveway, but a paved parking lot near a used car lot. The exact location of where the truck was is immaterial to this motion.

telephoned her husband, who is a Gardendale police officer, to get him to check the registration of the tag number shown in the photograph of the truck. He checked with a Gardendale dispatcher, who informed him the tag was register to Richard Jones, the defendant's father. The plaintiff testified that, but for the truck turning into traffic immediately ahead of her, there were no other threats or aggressive actions taken toward her. She could not see the passengers in the truck, and there is no indication that they acted in any hostile or aggressive manner toward her.

The Joneses' account of events is very similar, but with added details as to why they were in the area of plaintiff's lawyer's office. Both Mr. and Mrs. Jones testified that they were unaware that the plaintiff was following them until they received the instant motion and the photographs annexed to it. They testified that Mr. Jones had received a text[2] earlier in the day that an order for prescription medication was ready for him to pick up at a Walgreens pharmacy on Highway 31.[3] Although the prescription, in fact, was not ready, they left the Walgreens, traveling north on Highway 31, going toward the Gardendale Post Office to mail bills. Mrs. Jones had been experiencing upset stomach issues,

---

[2] Mr. Jones offered into evidence a photograph of a cellphone showing a text message he purportedly received from Walgreens in Gardendale, but it does not reveal the date of the text message. (Doc. 115-1, Ex. A).

[3] Mr. Jones testified that the Walgreens pharmacy in Gardendale is the one he is required to use for prescription medication by his medical insurance carrier.

causing her to become nauseated. As they were passing in front of the plaintiff's lawyer's office, Mrs. Jones noticed a small white car in the office parking lot and wondered whether it was the plaintiff's car. The car was parked and no one was in or near it. At that same time, she began to feel nauseated and touched Mr. Jones's arm to indicate that she needed to pull over in case she had to vomit. Mr. Jones then pulled off Highway 31 into a paved parking area in front of several businesses (not the lawyer's office), which Mr. Jones contends is about a half mile from the plaintiff's lawyer's office. They remained there from thirty seconds to a minute while Mrs. Jones sipped water and the nausea passed. They then pulled out of the parking lot, onto Highway 31 going north.[4] They did not notice any white car near them at the time.

Plaintiff testified that, although Mr. Jones is her father, she is afraid of him. She testified that he has threatened her with physical violence in the past and that she has had no contact with him for almost two years. She admits that he has not contacted her in over two years, nor has she seen him near her family or home.

---

[4] It is not clear from the testimony whether the Joneses stopped at the Gardendale Post Office before or after Mrs. Jones felt sick and they pulled over. Mr. Jones seems to testify that it was before they passed the lawyer's office and Mrs. Jones felt sick. Mrs. Jones, however, testified that they stopped at the post office *after* she became ill. The court notes that the Gardendale Post Office is significantly further north on Highway 31 than the lawyer's office, much closer to the intersection of Mt. Olive Boulevard. Therefore, if they stopped at the post office, it seems more likely that it was after Mrs. Jones felt sick, as she testified.

## Conclusions of Law

The court has previously addressed its authority to enter a personal-safety restraining order, and it will not be repeated here at length. The district court is authorized to enter a preliminary injunction or restraining order under the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12203(c), 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5, and Fed. R. Civ. P. 65. Title 42 U.S.C. § 12203(b) makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." This protection can be enforced through the remedies "available under sections 12117, 12133, and 12188 of this title. . . ." 42 U.S.C. § 12203(c). Read together, these statutory provisions seem to provide an injunctive remedy for retaliatory intimidation. If a "person" seeks to retaliate against an employee who has "opposed" unlawful disability discrimination or who has "made a charge" of unlawful disability discrimination by seeking to "coerce, intimidate, [or] threaten" that employee, injunctive remedies may be available to stop or prevent such retaliatory intimidation under § 12203(c). Section 12117, which is explicitly referenced by § 12203(c), provides remedies for discrimination in the employment context, specifically referring to the remedies available under 42 U.S.C. 2000e-5, among other sections. Pursuant to this authorization of equitable relief, the court could enter a preliminary injunction or restraining order under Fed. R. Civ. P. 65,

5

which binds "the parties; . . . the parties' officers, agents, servants, employees and attorneys; and . . . other persons who are in active concert or participating with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2)(A)-(C).

Just because the court has the authority to restrain coercive and intimidating conduct designed to interfere with rights under the ADA does not mean that authority should be exercised. Once again, the court finds that the evidence does not sufficiently establish a need for such preliminary injunctive relief. A preliminary injunction is a drastic and extraordinary remedy. *American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009); *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Whether to grant preliminary injunctive relief is weighed pursuant to a four-factor test, on each of which the movant must clearly carry the burden of persuasion. The movant must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest." *Odebrecht Const., Inc. v. Secretary, Florida Dep't of Transp.*, 715 F.3d 1268, 1273–74 (11th Cir. 2013); *see also Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir.

2011) (quoting *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008)).  However, "none of the four prerequisites has a fixed quantitative value.  Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."  *Unisource Worldwide, Inc. v. S. Cent. Alabama Supply, LLC*, 199 F. Supp. 2d 1194, 1199 (M.D. Ala. 2001), quoting *State of Texas v. Seatrain Int'l*, 518 F.2d 175, 180 (5th Cir. 1975).

In the unusual context of this case, where the plaintiff seeks an injunction to prevent Mr. Jones from attempting to coerce, intimidate, or threaten her with respect to her pending claims under the ADA, the plaintiff must establish a substantial likelihood that Mr. Jones has engaged in, or is threatening to engage in, such coercive and intimidating retaliatory conduct.  The evidence simply does not support that conclusion.  The instant application for injunctive relief, like her first one, appears to involve a coincidental meeting on a public street being traveled by both parties.  There is no evidence that Mr. Jones attempted to intimidate or threaten the plaintiff, or was even aware of her presence.  It simply is not surprising that coincidental contact may occur on Highway 31, which is the heavily-traveled, main thoroughfare through Gardendale.  Plaintiff's lawyer's office is on this main street.  Mr. Jones's business is located in Fultondale, just south of Gardendale.  The post office Mr. Jones uses is on Highway 31, as is the pharmacy he uses, which is south of where the lawyer's office is located.  Both

7

parties admit that there have been no communications between them for over two years. On this particular occasion, other than the plaintiff following Mr. Jones and photographing his truck, nothing happened, much less anything threatening or coercive. There is no basis for finding that the coincidental meeting on Highway 31 in Gardendale was anything but a coincidence, not an intended effort to intimidate or threaten the plaintiff. The court is unwilling to order Mr. Jones to refrain from using Highway 31 or traveling to Gardendale just to prevent the possibility that the plaintiff may inadvertently see him or his vehicle on the highway.

The Motion for Restraining Order (Doc. 112) is DENIED.

Not later than fourteen (14) days after the date of this Memorandum Opinion and Order, the defendant may (if it so chooses) petition the court for an award of attorneys' fees and costs incurred responding to this motion. The petition should explain the legal basis for an award of fees and costs against the plaintiff, and have a clear explication of the amounts sought and for what they were incurred. The defendant should supply such billing records, time-sheets, and other documentation necessary to consider the petition. If a petition is filed by the defendant, the plaintiff may respond to it by January 9, 2019.

DONE this 12th day of December, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE