IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MANDY POWRZANAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:17-cv-975-TMP |
| ) | |
| JONES UTILITY AND ) | |
| CONTRACTING CO., INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

On October 17, 2018, the plaintiff, Mandy Powrzanas, filed a motion for sanctions against the defendant and defendant's counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. 95). She contends that the counterclaims filed against her by the defendant and counsel violate Rule 11 as being both frivolous and offered for an improper purpose. Having carefully considered the evidence and arguments advanced by all counsel (docs. 97, 111, and 114), the court concludes that the motion is due to be denied.

I. <u>Factual Background</u>

This action commenced on June 9, 2017, when the plaintiff filed her complaint alleging that she had been constructively discharged from her employment with the defendant in violation of the Americans with Disabilities Act

("ADA"). The defendant, Jones Utility and Contracting Co., Inc., is a family business, owned and operated by the plaintiff's father, Richard "Ricky" Jones. Plaintiff and her sister, Shawna Stewart, worked in the office of the business and were authorized to write and sign checks in the ordinary course of the business. Although the plaintiff had worked in her father's business since 2006, the office atmosphere changed dramatically in late 2015, when Mr. Jones's wife and the plaintiff's mother, Donna Jones, passed away and Mr. Jones soon began a relationship with his current wife, Patricia Jones.

To describe the office atmosphere from November 2015 until the plaintiff left in March 2016 as chaotic is an understatement. There were frequent arguments, descending into cursing and shouting, between the plaintiff, her sister, and Mr. Jones. On more than one occasion, Mr. Jones threatened suicide or to "whip Mandy's ass," although there is no evidence of any actual physical violence. In February 2016, the plaintiff quit her job, but was soon persuaded to return to work a few days later when Mr. Jones threatened suicide. When she returned in mid-February, she asked Mr. Jones to reduce the level of tension and discord, to avoid shouting and cursing, because it was making her sick. She left again permanently in early March 2016, after she, her sister, and Mr. Jones got into an a shouting argument during lunch at a restaurant, ultimately leading to Mr. Jones angrily throwing his leftover food on cars in the restaurant parking lot.

On August 24, 2016, the plaintiff filed a charge of discrimination with the EEOC, contending that she was constructively discharged due to her disability from fibromyalgia and the defendant companies fail to reasonably accommodate her condition. On March 14, 2017, the EEOC closed the matter and gave the plaintiff a Notice of Right to Sue letter, and the instant action was filed on June 9, 2017.

After service of process on the defendant ("Jones Utility"), a three-count counterclaim was filed on August 11, 2017. Count I alleged a claim for breach of contract against the plaintiff based on her failure to pay a promissory note dated April 20, 2011, in the face amount of $66,000.00, which fully matured on April 20, 2016. Count II alleged conversion, based on a check written by the plaintiff to herself without authorization for $4,000.00.[1] Count III alleged breach of fiduciary duty based on the conversion of the same check alleged in Count II. On August 31, 2017, the plaintiff filed her answer to the counterclaim, asserting that the promissory note was a fraudulent document, meant to cover up a scheme by Mr. Jones to transfer money between his businesses, and not evidence of a true loan to the plaintiff.

---

[1] The counterclaim erroneously refers to the check as "Number 1960," which, in fact, was a check written and signed by the plaintiff to her sister, Shawna Stewart, in the amount of $4,000.00. Instead, check number 1961 was the check in the amount of $4,000.00 written and signed by the plaintiff to herself.

Litigation proceeded, contentiously, for several months. On July 2, 2018, counsel for the plaintiff wrote a letter to defense counsel pursuant to Rule 11(c)(2), demanding that the counterclaims be dismissed within twenty-one (21) days, or the plaintiff would seek Rule 11 sanctions. On October 3, 2018, an Amended Counterclaim was filed, dropping Counts II and III, but retaining Count I for breach of contract on the promissory note. The instant motion was filed two weeks later, on October 17, 2018.

II. Discussion

Rule 11(b) of the Federal Rules of Civil Procedure states the following:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Subsection (c) authorizes the imposition of sanctions for violation of the representations required by subsection (b). The sanctions may be imposed on the lawyer, law firm, and party who "is responsible for the violation."

The court of appeals has explained that, "Rule 11 sanctions are properly assessed '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.'" *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996)). In making that assessment, the court engages in a two-prong inquiry. First, the court weighs "whether the party's claims are objectively frivolous," and second, "whether the person who signed the pleadings should have been aware that they were frivolous." *Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1238 (S.D. Fla. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)); see also *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*, 952 F. Supp. 2d 1373, 1380 (N.D. Ga. 2013); *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F.Supp.2d 1256, 1266 (N.D. Ala. 2006). "Although sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence

is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). "The 'objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted.'" *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*, 952 F. Supp. 2d 1373, 1380 (N.D. Ga. 2013) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)); accord *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (holding courts use an objective standard to determine whether a reasonable attorney would have known the filing was legally and factually justified). Attorneys have a duty to make "reasonable" pre-filing inquiries to avoid filing papers not supported by any factual basis. "The reasonableness of the inquiry 'may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; ... or whether he depended on forwarding counsel or another member of the bar.'" *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Mike Ousley Productions, Inc. v. WJBF–TV*, 952 F.2d 380, 382 (11th Cir.1992)). Thus the standard applicable to counsel's pre-filing investigation also is "reasonableness under the circumstances." *Anderson v. Smithfield Foods, Inc.*,

353 F.3d 912, 915 (11th Cir. 2003); *United States v. Milam*, 855 F.2d 739, 743 (11th Cir. 1988) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (*en banc*)). Further, under the bad faith standard of Rule 11(b)(3), an attorney and party may be sanctioned only if they acted in bad faith to file a pleading for the intentional purpose of harassing and vexing the opposing party or to needlessly increase the costs of the action. See *Thomas v. Evans*, 880 F.2d 1235, 1243 (11th Cir. 1989). Bad faith implies a deliberate purpose, not a mere error or misjudgment about the facts or law of the claim. The party seeking the Rule 11 sanction must show that the improper purpose for the filing "constituted the sole reason for bringing the lawsuit." *Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1239 (S.D. Fla. 2008).

In the instant case, the plaintiff asserts that the counterclaim filed by the defendant, with assistance of and signed by counsel, violates Rule 11(b)(1), because the factual contentions underlying the counterclaim lack evidentiary support, and Rule 11(b)(3), because it was filed for an improper purpose. The court will address these in order.

    A. *Lack of Factual Support*

The counterclaim filed by the defendant rests on two factual bases. The first was the 2011 execution of a promissory note by the plaintiff, evidencing a $66,000.00 debt payable to the defendant when the note matured in April 2016.

The second was the existence of a check in the amount of $4,000.00, written by the plaintiff to herself on the defendant company's corporate bank account.[2] Based on these factual foundations, the defendant asserted a counterclaim against the plaintiff for breach and nonpayment of the promissory note and two other claims for conversion and breach of fiduciary duties in relation to the check written by the plaintiff to herself. The plaintiff contends that these claims against her are meritless—and known by Ricky Jones and the company's attorneys to be meritless—because the promissory note was not a real debt but part of a scheme by Mr. Jones to set a minority-owned company to bid for business set aside for such companies. Likewise, the plaintiff asserts that the two checks she wrote to herself and her sister were authorized by Mr. Jones, as were many other such checks she wrote to herself, her sister, her mother, and several other people at the direction of Mr. Jones.

Turning first to the promissory note, Mr. Jones testified in his deposition and by affidavit that the promissory note evidences a loan Jones Utility made to the plaintiff to enable her to buy her share of stock in a new company, Karma Construction, being set up in 2011 by the plaintiff, Shawna Stewart, Donna Jones, and Geniece Dancy. He testified that the business was set up by the four women

---

[2] The counterclaim mistakenly refers to this as check number 1960. In fact, it was check number 1961. As shown by a subsequent audit of the defendant company's checking records, the plaintiff wrote two checks in the amount of $4,000.00 each, one to herself and one to her sister, Shawna Stewart. Both checks were signed by the plaintiff. The check to the plaintiff was check number 1961, and check number 1960 was the one written to her sister.

for their own benefit and that he had no control over it or its business. In support of this assertion, the defendant has offered a copy of the April 20, 2011, Shareholders Agreement among the four women setting up the company. This Agreement reflects that the plaintiff was a 22% owner of Karma Construction, which is consistent with the $66,000.00 amount of the promissory note as the plaintiff's share of ownership, based on plaintiff's and Mr. Jones's testimony that Karma was initially capitalized with $300,000.00. Further, in filing her federal income tax return for tax year 2011, the plaintiff acknowledged to an account preparing her personal tax return that, as a percentage owner of Karma, a Subchapter S corporation, she personally was entitled to claim her share of the losses suffered by the company that year. See Docs. 90-5, 90-6. In that tax year, she claimed a loss from Karma totaling $65,972.00, that was used to offset otherwise taxable income, reducing her federal income tax.

Although the plaintiff has testified that Karma was a sham, set up by Mr. Jones as a way to bid on minority-set aside contracts, the fact that the plaintiff claimed a tax loss in the same year the company was established tends to support the assertion that it was not a sham, but one in which she was a part owner. This is probative to confirm the legitimacy of the note as evidencing a loan made by Mr. Jones to the plaintiff to enable her to buy her shares of stock in Karma. While there may be factual disputes about the note, it clearly constituted a reasonable

factual basis on which the defendant and counsel sought collection of the debt when it matured. There is nothing "objectively frivolous" about the promissory note or the counterclaim to collect it. Thus, the counterclaim for breach of the note did not lack a reasonable factual basis for purposes of a Rule 11 analysis.

The same is true of the conversion and breach of fiduciary duty claims alleged in Counts II and III of the counterclaim, both of which have now been dropped from the counterclaim.[3] It is undisputed as a fact that the plaintiff wrote check number 1961 to herself. It is inconsequential that the counterclaim mistakenly identified the check as number 1960, when the audit requested by the plaintiff clearly demonstrated that the actual check was 1961. A mere typographical error cannot be the basis of a Rule 11 sanction. What is disputed is whether she had the authority to write and sign the check on behalf of the defendant company—she says she did and Mr. Jones says it was not authorized.[4] Once again, while there may be a factual or legal dispute over the merits of the

---

[3] Mr. Jones testified in his deposition that Counts II and III of the counterclaim were dropped because his lawyers advised him to do so. It was not economically viable to pursue them. The check involved was for $4,000.00, but the costs incurred attempting to recoup the lost money had exceeded that amount.

[4] The plaintiff points to the hundreds of checks written by her, reflected in the audit trail of the defendant company, as conclusive proof that she was authorized to write these two particular checks. It is true that the plaintiff was authorized to write checks for legitimate business expenses and activities. The fact that she performed this task, however, does not prove that every check she wrote was authorized. If that were the case, no bookkeeper would ever be charged with embezzlement.

counterclaims related to the check, there is no question that there was a reasonable factual basis for them at the time they were pleaded.

All three counts of the counterclaim as originally filed were grounded on reasonable factual bases, even if the parties dispute the significance of them. It is not disputed that a promissory note was executed by the plaintiff and that $66,000.00 was transferred as capital funds to Karma on her behalf. There is no dispute that the plaintiff wrote and signed the check to herself. These basic facts, however otherwise controverted by the parties, means that there was a reasonable factual basis for the counterclaim within the requirements of Rule 11(b)(1).

### B. *Improper Purpose*

The plaintiff also contends that, even if there was a factual and legal basis for each counterclaim, they were filed by counsel and the defendant for the improper purposes of harassing her and further aggravating her fibromyalgia. The plaintiff questioned Mr. Jones about this during his deposition, and he steadfastly denied any malicious or bad faith purpose. (*See* Richard Jones Depo, Doc. 95-20, pp. 73-74, 88-90, 91-92, 93-94, 137-138). He maintained that counterclaim was filed because he believed it to have merit. Circumstantial evidence also suggests the counterclaim was not for an improper purpose. Although it is true that the defendant took no steps to collect either the promissory note or the check until after the plaintiff filed suit against it in 2017, the counterclaims are compulsory in

nature. The defendant had to decide whether to pursue the claims or forfeit them under Rule 13 of the Federal Rules of Civil Procedure. A reasonably prudent attorney would be inclined to pursue them, rather than risk their loss. It is not improper or retaliatory for a defendant to pursue a fact-based counterclaim when the decision whether to do so is forced on the defendant by the compulsory nature of the counterclaim.

Moreover, the defendant has not singled out the plaintiff for collection of the debt. Of the four original investors in Karma Construction, Dancy's investment was in the form of vehicles and equipment, later surrendered to the defendant when Karma collapsed. The defendant has pursued its promissory note claims against the plaintiff in this action and against Shawna Stewart in a state-court action. The remaining promissory note debt was owed by Richard Jones's former wife, who is now deceased and against whose estate collection efforts would be difficult and expensive. The fact that Jones Utility has pursued its remedies on loans made to other investors in Karma undercuts the assertion that it acted with an improper or malicious intent toward the plaintiff.

The circumstances simply do not demonstrate that the counterclaims pleaded by Jones Utility in this action were motivated by bad faith, any more so that the claims pleaded by the plaintiff against the defendant. The counterclaims are objectively reasonable and grounded on a factual basis supported by evidence.

Other than the bitter family conflict underlying this action—which goes both ways—there is no evidence of bad faith or an improper purpose in the filing of the counterclaims by counsel for Jones Utility or by the defendant itself.

III.  Conclusion

Based on the foregoing facts and considerations, the court finds that the plaintiff's motion for Rule 11 sanctions against the defendant and its counsel is due to be and hereby is DENIED.

DONE this 19th day of December, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE