# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MANDY POWRZANAS,              )
                             )
    Plaintiff,              )
                             )
v.                           )    Case No. 2:17-cv-00975-TMP
                             )
JONES UTILITY AND            )
CONTRACTING CO., INC.,       )
                             )
    Defendant.              )

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the "Offensive Motion for Summary Judgment" on Count I of its counterclaims by Jones Utility and Contracting Company ("Jones Utility" or "Counterclaimant"), filed on September 14, 2018.[1] (Doc. 89). The counterclaimant seeks summary judgment against Mandy Powrzanas ("Counter-defendant" or "Powrzanas") on Jones Utility's claim seeking to collect on a promissory note signed by her to evidence a loan from Jones Utility to Powrzanas for the purpose of enabling her to buy shares of stock in a new business, Karma Construction, Inc. Oral argument was heard on December 11, 2018. The matter has been fully briefed, and the parties have unanimously

---

[1] Counterclaimant Jones Utility has previously dismissed all of its counterclaims against the plaintiff, except Count I, which alleges a claim for breach of a promissory note.

consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). (Doc. 15). The court has considered all of the evidence and arguments set forth by both parties.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 47 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the nonmovant has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 246. His guide is the

same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).

However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The evidence supporting a claim must be "substantial," Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact. Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249-50 (11th Cir. 2004). If the non-movant's evidence is so thoroughly discredited by the rest of the record evidence that no *reasonable* jury could accept it, the evidence fails to establish the existence of a genuine issue of fact requiring a jury determination. See Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape."); Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009). If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249 (citations omitted); <u>accord</u> <u>Spence v. Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the nonmovant.  <u>Anderson</u>, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## SUMMARY JUDGMENT FACTS

For the purposes of the instant motion for summary judgment, all facts are construed in favor of the nonmovant, which in this instance is Counter-defendant Powrzanas.  The following facts, so construed, are relevant for the purposes of summary judgment.  Most of the facts are undisputed; therefore, for the purposes of clarity, the facts as written in the body of the text will largely be the facts according to and construed in favor of Powrzanas.  Where appropriate to note a disagreement, the court will indicate the conflicting version of the facts in a footnote.

On April 20, 2011, Powrzanas signed a promissory note evidencing a loan from Jones Utility to her for the purpose of enabling  her to purchase her shares of

stock in starting a new business called Karma Construction, Inc. Powrzanas disputes that it was a real loan, but later admitted in deposition testimony that the document was "intended" to evidence a loan because such was required by the Alabama Department of Transportation for Karma Construction to be considered a Disadvantaged Business Enterprise (DBE). To date, Powrzanas has not repaid any amount to Jones Utility in connection with the promissory note.

Promissory Note[2]

The promissory note evidences a loan from Jones Utility to Mandy Powrzanas for the initial capital contribution to Karma Construction, Inc. Powrzanas was going to own 22% of the shares of Karma Construction as a result of her $66,000[3] capital contribution. The term of the note was 60 months, with interest accruing at the rate of 3% per annum. The note provided that, during the 60-month term, payments on the note would be due and paid only out of distributions from Karma Construction, but that the entire balance of the loan

---

[2] The facts in this section are taken directly from the text of the promissory note. The court, in a later section, will address the dispute by the parties as to the actual nature of the obligations imposed by the document, if any.

[3] There is some confusion in the document as to whether the loan was for $100,000 or $66,000. However, the parties have agreed that the correct amount was $66,000. Counterclaimant Jones Utility has also argued that this does not create an ambiguity in the document because any possible ambiguity relates only to the amount, which is not at issue, and they are willing to accept the lesser amount in favor of the counter-defendant.

would be due on occurrence of a default, or on April 20, 2016, as a final balloon payment.[4]  The document contains an integration clause, as follows:

> 19.    ENTIRE AGREEMENT.   This Note and the Pledge and Security Agreement by and between Debtor and Lender, dated as of the Effective Date, are the entire understandings and agreements between Debtor and Lender regarding their subject matter and supersedes all prior and contemporaneous understandings and agreements regarding their subject matter.

(Promissory Note, Doc. 90-2).

Effect and Enforceability of the Note[5]

Despite the plain reading of the document, Powrzanas disputes that there was ever a real loan.  Rather, she testified in her deposition that the loan documents were a sham and part of a conspiracy, in which she participated, to commit a fraud

---

[4] Paragraph 4(b) of the Note reads as follows:

> (b)        Balloon Payment.  On April 20, 2016, Debtor will pay Lender any outstanding Indebtedness as a final balloon payment (the "Balloon Payment"). Debtor' [sic] obligation to pay the Balloon Payment will not be conditioned upon, and will be independent of, whether Karma declares or makes any Distribution. Debtor will take all reasonable actions to pay the Balloon Payment when due, including, if necessary, obtaining a loan from a third party to fund the Balloon Payment.

(Promissory Note, Doc. 90-2).

[5] Counterclaimant Jones Utility asserts that this document evidences a valid loan and promissory note, not mere window dressing of a fraud, and that it expects the loan to be repaid in full according to the terms of the agreement.  In his deposition testimony, Ricky Jones denied that the Note and creation of Karma was  sham or fraud, but instead was a legitimate loan to help his daughters and wife start their own business.

against the Birmingham Water Works Board and the Alabama Department of Transportation. She testified that her father and the owner of Jones Utility, Ricky Jones, orchestrated the creation of Karma Construction in order to comply with the Birmingham Water Works Board's requirements that 30% of the work performed under its contracts be subcontracted out to minority-owned businesses (in this instance, a women-owned business) and to get contracts set aside of disadvantaged businesses. However, for Karma to be certified as a "disadvantaged business entity," or "DBE," by the Alabama Department of Transportation, the start-up funds could not be a gift from a non-DBE firm. Hence, according to Powrzanas, the documents were intended to serve as proof that the funds from Jones Utility were not a gift, but a loan. Additionally, the loan documents were intended to hold accountable one of the Karma shareholders, Geniece Dancy ("Dancy"), because she had a history of poor business acumen and needed to be held "accountable" for the success or failure of the business. However, Powrzanas testified that there was never any obligation for her to pay back the funds because it was not a true loan, but merely "paperwork" to comply with the ALDOT requirement.

On the date that she signed the documents, Powrzanas, Dancy, and Powrzanas's mother and sister went to Jones Utility and signed the documents. The documents were prepared by a lawyer engaged by Powrzanas (see Counterclaimant's Ex. 7, Doc. 106-1), and with whom she actively participated

and consulted on some of the substantive terms. (See Counterclaimant's Ex. 8, Doc. 106-2 and Ex. 9, Doc. 106-3). She has stated that neither she nor anyone else present read the documents prior to signing them because it was understood that it was not a real loan that she had any obligation to repay. Powrzanas also argues that the only reason her father is now seeking to collect on the promissory note is because she filed an EEOC charge and a lawsuit for discrimination against Jones Utility. She argues that the sham nature of the note is further evidenced by the fact that Jones Utility did not collect against Dancy, but allowed her to surrender to Jones Utility some heavy equipment in lieu of payment after she was terminated from the company.[6] Additionally, the debt owed by Powrzanas's now deceased mother remains outstanding, and the company has made no attempt to collect on that debt.

## DISCUSSION

This motion essentially turns on whether the counter-defendant, Powrzanas, may introduce extrinsic evidence to contradict the written Promissory Note despite the parol evidence rule. She contends that, despite the plain face of the documents, there never was any intention to create a real loan to her or debt obligation on her part. She argues that the Note and other documents creating Karma were mere

---

[6] The evidence shows that Dancy also surrender all of her shares of stock in Karma, in addition to the heavy equipment she brought to Karma as part of her initial investment.

sham "paperwork" to satisfy the ALDOT that Karma was a DBE and that its start-up funds were not a gift from Jones Utility. It was understood, she asserts, that she was never intended to repay the loan to Jones Utility.

Under Alabama law, which both parties admit governs the issue before the court, "the requisite elements of contract include: an offer and an acceptance, consideration, and mutual assent to the terms essential to the formation of a contract." Ex parte Cain, 838 So.2d 1020 (Ala. 2002) (internal citations omitted). When faced with an issue of contract interpretation, the court will first attempt to determine the intent of the parties from the four corners of the document. Bad Ass Coffee Co. of Hawaii v. Naughty Donkey Enterprises, LLC, 64 So. 2d 659, 662 (Ala. Civ. App. 2010). Where the contract is clear and unambiguous, the court will interpret the intentions of the parties consistent with the plain meaning of the written agreement. Id. A written instrument that expresses the parties' transaction and intention is the "sole expositor" of the agreement, unless the agreement is marred by mistake, *fraud*, or ambiguity. Hinds v. Plantation Pipe Line Co., 455 F.2d 902, 906 (5th Cir. 1972)[7] (citing Joseph v. Hopkins, 276 Ala. 18, 158 So. 2d 660 (Ala. 1963), Collier v. Brown, 285 Ala. 40, 228 So.2d 800, 803 (Ala. 1969).

---

[7] See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (All decisions from the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.).

The "parol evidence rule" provides that a party to an unambiguous contract may not attempt to "change, alter, or contradict" an unambiguous written contract by introducing extrinsic evidence of prior or contemporaneous oral agreements, unless there is some evidence of "*fraud*, mistake, or illegality." Environmental Sys., Inc. v. Rexham Corp., 624 So. 2d 1379, 1381 (Ala. 1993) (italics added). "[A]ny application of the [parol evidence] rule presupposes the existence of an existing, valid contract expressing the obligations of the parties." Richard Kelley Chevrolet Co., Inc. v. Seibold, 363 So. 2d 989, 993 (Ala. Civ. App. 1978) (citing Sellers v. Dickert, 185 Ala. 206, 64 So. 40 (Ala. 1913). If, however, no lawful contract is ever formed due to fraud or mistake, the parol evidence rule has no field of operation. The parol evidence rule applies to promissory notes in the same fashion as any other contract. Ford v. Southern Motor Co., 208 Ala. 170, 93 So. 902, 903 (Ala. 1922).

There are exceptions to the parol evidence rule. Parker v. McGaha, 321 So. 2d 182, 185 (Ala. 1975). For example, parol evidence is admissible where that evidence shows that the contract is void or that there is a lack or failure of consideration.[8] See e.g., id.; Mann v. Cherry, Bekaert and Holland, 414 So. 2d 921 (Ala.1982). Additionally, evidence of fraud is admissible to contradict the terms of

---

[8]    These exceptions are logical extensions of the rule that a valid contract must exist for application of the parol evidence rule. If no contract exists because it was void or lacked consideration, the inclusion of an integration clause invoking the parol evidence rule is just as void.

a contract even if the contract is fully integrated. Parker v. McGaha, 321 So. 2d 182, 185 (Ala. 1975). Furthermore, extrinsic evidence may be admitted to clarify the terms of an ambiguous contract. McClendon v. Eubanks, 30 So. 2d 261,268 (Ala. 1947).

Counter-defendant Powrzanas has not alleged that the contract falls within the exceptions to the parol evidence rule such that the court is permitted to consider extrinsic evidence. She has not alleged or argued that there was a lack or failure of consideration for the Promissory Note as she admits that she received the benefit of $66,000.00 used to purchase her initial shares of stock in Karma.[9] She does not allege that she *personally* was defrauded by the Note. To the extent she argues the Note was fraudulent, she was not the victim of the fraud, for she understood all along that it was mere sham "paperwork" to deceive ALDOT. If anything, it was a fraud perpetrated against the Birmingham Water Works Board and the Alabama Department of Transportation, which she was fully aware of and participated in. If she contends that the Note was simply part of a scheme to enable Jones Utility to meet the 30% rule adopted by the Water Works Board, she knew it and participated in it. Powrzanas was not misled or defrauded by the written Note.

---

[9]    She does advance the argument that she personally never "received" the loan proceeds because they were wired directly from Jones Utility's bank account to Karma's bank account. She does not deny, however, that she received her shares of Karma stock as a result of the payment of $66,000.00 on her behalf, even if she never personally "touched" the money.

Perhaps Powrzanas is arguing that the Note was "void" in the fundamental sense that none of the parties to it ever meant for it to be a real debt, i.e., there was no true "meeting of the minds" to create a debt between her and Jones Utility. But there is nothing on the face of the Note suggesting that it was not a real debt instrument. Nothing in the Note makes it void as contrary to Alabama law or public policy. Powrzanas contends only that, despite what is written in the Note, the parties were kidding, they were not serious, they meant the Note to be a cipher. Before allowing a party to a contract to avoid the parol evidence rule by arguing simply that the instrument just is not what it appears to be, there must be substantial evidence that the parties to the contract never intended to form a true agreement. Such a convenient argument so completely eviscerates the rule by simply avoiding it all together, there must be a strong showing of evidence supporting it. If not, no written contract is protected by the parol evidence rule if any party to it can simply say, "Well, that's not what we meant to do." That is precisely what the parol evidence rule is meant to prevent.

So far as the court can understand her brief, Powrzanas has inartfully made two arguments. The first is that, despite the plain language of the document, the promissory note does not mean what it says, that it is a fake, an illusion. In other words, despite the document being an integrated and facially valid promissory note, Powrzanas says she was never personally obligated to repay the loan.

Powrzanas has made no argument that she was unaware of what she was signing, that she was coerced into signing it, or that she was fraudulently induced into signing it. Rather, her only suggestion is that her signature on the document did not bind her to pay the Promissory Note because the note was just part of a larger fraudulent scheme of which she was aware and willingly participated in.

For summary judgment purposes, the party moving for summary judgment has the initial burden of showing (1) there are no genuine issues of material fact and (2) the moving party is entitled to judgment as a matter law. Once that initial burden has been met, the opposing party must come forward with "substantial" evidence supporting each element of her claim or defense. In the context of this case, Jones Utility has come forward with the Note and other documents evidencing the loan made to fund the start-up of Karma Construction. Jones has shown (and Powrzanas admits) that she has not repaid the Note according to its terms. In her defense, it is incumbent on Pawrzanas to present "substantial evidence" of a "genuine" issue of fact concerning the legitimacy of the Note. The court is not persuaded that she has done so.

In a different context, the Supreme Court has addressed the "substantiality" of evidence offered to attempt to create a "genuine" issue of material fact. The Court has explained:

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c) (now Rule 56(a)). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Hammett v. Paulding County, 875 F.3d 1036, 1048-1049 (11th Cir. 2017); Turner v. Tamko Building Products, Inc., No. 7:11-CV-03741-TMP, 2013 WL 6636346, at *2 (N.D. Ala. Dec. 17, 2013) ("The evidence supporting a claim must be 'substantial.' Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379, 382 (5th Cir. 1981). A mere scintilla of evidence is not enough to create a genuine issue of fact. Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249–50 (11th Cir. 2004). If the nonmovant's evidence is so thoroughly discredited by the rest of the record and is evidence that no reasonable jury could accept, that

evidence fails to establish the existence of a genuine issue of fact requiring a jury determination."). Mere conclusory factual assertions are not "substantial" evidence sufficient to defeat summary judgment. See Biestek v. Berryhill, ___U.S. ___, 139 S. Ct. 1148, 1159 (2019) (Gorsuch. J., dissenting) ("[C]ourts have held that a party or expert who supplies only conclusory [factual] assertions fails this [substantial-evidence] standard too.") (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ("The object of [summary-judgment practice] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit")).

The only factual basis on which Powrzanas rests her argument is her own testimony alone. Despite the voluminous evidence that the loan was made for Powrzanas to purchase her shares of stock in start-up of Karma, she asserts in a conclusory manner that she was never expected to repay the loan. The Note and corporate documents were drafted by lawyers and accountants of her choosing and with whom she consulted. She purchased a substantial portion of the shares of stock in Karma and, in 2011, claimed a deduction on her *personal* tax return for her pro rata share of the losses Karma experienced that year. (Jones Utility Ex. 5, doc. 90-5). During the preparation of tax returns in March 2012, an accountant emailed Powrzanas, "Just FYI—we are taking losses from Karma for all 4 shareholders assuming you all 'materially participate' in the business." She

replied, "This is true for all 4 members. Do you know what Shawna is getting back yet? And yes please email her stuff to me." (Jones Utility Ex. 6, doc. 90-6). She plainly was active in the management of Karma and claiming the benefits of ownership. It is telling that Powrzanas has not offered the deposition or affidavit testimony of any lawyer or accountant involved, or even of any other member of Karma, in support of her assertion that Karma was a fiction and the Note was mere sham "paperwork."[10] The overwhelming evidence so thoroughly discredits Powerzanas's contention, her conclusory testimony alone cannot be regarded as "substantial" evidence sufficient to create a genuine issue of material fact.

---

[10] Powrzanas has offered the affidavit of her husband, Rodney Powrzanas, to state the following:

> 15. Upon information and belief, it was Mr. Jones' idea to start Karma Construction, Inc. and he told Mandy, Shawna and Donna they were partnering up with Geniece Dancy. To be exact, Donna Jones did not want to do it and was very angry about the entire venture.

> 16. Upon information and belief, the promissory note was for paperwork only. It wasn't a real loan nor was Mandy obligated to pay that back.

(Powrzanas Ex. 3, doc. 118-3). Because both of these statements are premised on the witness's "information and belief," they fail to create a genuine issue of fact. See Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002) ("Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment."); Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) ("To raise a genuine issue of material fact, allegations in affidavits must be based on personal knowledge, and not based, even in part, 'upon information and belief.'"). Further, the witness's statements regarding the intent and state of mind of Donna Jones are unsupported speculation. He has no personal knowledge of what she actually thought.

Second, at oral argument the counter-defendant argued that the contract was unenforceable due to "fraud in the factum." Alabama law has defined "fraud in the factum" this way:

> The rule relative to the effect of fraud in the factum is stated in the case of <u>Burroughs v. Pacific Guano Co</u>., 81 Ala. 255, 1 So. 212, 213, thus:
>
>> "Where a person signs an instrument without reading it, or, if he can not read, without asking to have it read to him, the legal effect of the signature cannot be avoided by showing his ignorance of its contents, in the absence of some fraud, deceit, or misrepresentation having been practiced upon him. But the rule is otherwise, and the instrument will be held void, where its execution is obtained by a misrepresentation of its contents,--the party signing a paper which he did not know he was signing, and did not really intend to sign. It is immaterial, in the latter aspect of the case, that the party signing had an opportunity to read the paper; for he may have been prevented from doing so by the very fact that he trusted to the truth of the representation made by the other party with whom he was dealing.

<u>Drinkard v. Embalmers Supply Co</u>., 244 Ala. 619, 621, 14 So. 2d 585, 586 (1943). As understood in Alabama, "fraud in the factum" is fraud in the execution of a written contract; that is, where a party is misled into signing something he had no real intention of signing. This can occur when there is a misrepresentation about the essential nature of the contract, such as where it is represented that the instrument is a note when, in fact, it is a mortgage. Further, ""Fraud in the factum

is a traditional fraud.  A claim of fraud, including such fraud as fraud in the factum, requires the party making the claim to prove by substantial evidence that he or she reasonably relied on the alleged misrepresentation."  <u>Ex parte Majors</u>, 827 So. 2d 85, 91 (Ala. 2002) (citing <u>Foremost Ins. Co. v. Parham</u>, 693 So.2d 409 (Ala.1997)).

In support of her argument that this renders the agreement void because there was no meeting of the minds, Powrzanas has cited <u>Haller v. Borror Corp.</u>, 552 N.E.2d 207, 210 (Ohio 1990), an Ohio state case.  Aside from the fact that this case has no precedential value to a dispute arising under Alabama law, it rejected the assertion that fraud in the factum can exist when the party asserting it had the opportunity to read the document he signed.  "[T]he agreement is not void for fraud in the factum when the [contracting party] has an opportunity to read and understand the document before execution."  <u>Haller v. Borror Corp.</u>, 50 Ohio St. 3d 10, 14, 552 N.E.2d 207, 210 (1990).  As the court in <u>Haller</u> explained, "Where device, trick, or want of capacity produces '"no knowledge on the part of the [contracting party] of the nature of the instrument, or no intention on his part to sign a [contract] or such a [contract] as the one executed,"' there has been no meeting of the minds.  In such cases the act or representation of one party against the other constitutes fraud in the factum and renders the release obtained void *ab*

*initio*." Id., at 13-14 (quoting Picklesimer v. Baltimore & Ohio RR. Co., supra, 151 Ohio St. 1, 5, 38 O.O. 477, 478, 84 N.E.2d 214, 216 (1949)).

The facts of this case simply do not show that Powrzanas did not know what she was signing. Her fraud in the factum argument is wholly meritless on the undisputed facts of this case. Fraud in the factum "procures a party's signature to an instrument without knowledge of its true nature or contents." Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 93, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987). Powrzanas has never alleged that she did not understand what she was signing. Rather she has alleged and argued that she signed this document to participate in a conspiracy to commit a fraud against the Alabama Department of Transportation and the Birmingham Water Works Board, orchestrated by her father, Ricky Jones, the owner of Jones Utility. Even accepting the fraudulent scheme as true, these facts simply do not constitute fraud in the factum as to Powrzanas. She communicated with the lawyer who was drafting the agreement, and she discussed the payment terms with the attorney. Additionally, Powrzanas involved the accounting firm, Barfield, Murphy, Shank, and Smith, LLC, who was assisting in the formation of Karma Construction. Given that she was intimately involved in the drafting process of the documents, she certainly cannot now say she was unaware of the nature or contents of the Note. Even after the Note was drafted, she had the opportunity to read and understand it, yet she claims she did

not. There is no substantial evidence in the record that Powrzanas did not understand the true nature of the Note she signed. She has pointed to no statements or representations by Ricky Jones or others leading her to believe the Note was not real.

The Note is not ambiguous. It does not require extrinsic evidence to make clear the intent of the parties, which is derived from the words of the Note itself. While Powrzanas argues that the parties intended the Note to be a nullity, there is no ambiguity in what they wrote (with the assistance of counsel). The very purpose of the parol evidence rule is to prevent the use of extrinsic evidence to introduce otherwise non-existent ambiguities. The ambiguities in the instrument must pre-exist the extrinsic evidence, not the other way around. That simply is not the case here; there is no basis for ignoring the parol evidence rule and allowing the introduction of extrinsic evidence about the parties' "real" intent.

Rather than pointing to some basis for getting around the parol evidence rule, she has simply filled her brief with extrinsic evidence and presumed that the court will consider it. However, Powrzanas has failed to cite a single case or other legal authority in her brief, much less a case or legal authority that suggests the law permits the court to deviate from the parol evidence rule and to consider all of her extrinsic evidence. Furthermore, the counter-defendant has not argued that there

are genuine issues of material fact, so presumably, she agrees that this is a purely legal dispute despite her lack of legal arguments.

Under Alabama law, this argument simply cannot stand of its own weight. Where a party has not alleged fraud in procuring her signature on a document, she is foreclosed from arguing the existence of a contemporaneous oral agreement with different terms. Holczstein v. Bessemer Trust & Savings Bank, 136 So. 409, 414 (Ala. 1931) (collecting cases). "If this were not the law, 'contracts would not be worth the paper on which they are written.'" Id.; see accord, Blake v. Coates, 294 So.2d 433, 435 (Ala. 1974) (holding that a guarantor could not avoid liability on a note by arguing that there was a contemporaneous oral agreement where he was not bound to pay).

## CONCLUSION

In accordance with the above discussion, the court finds that there is no substantial evidence but that Jones Utility and Mandy Powrzanas executed a binding and valid promissory note under which Jones Utility loaned Powrzanas $66,000, and which is now in default. The document is unambiguous. There is no substantial evidence that the parties did not actually agree on the terms of the Note. Counter-defendant Powrzanas has not overcome the parol evidence rule to permit the court to look beyond the four corners of the document and consider extrinsic

evidence. She has offered no substantial evidence that the Note was a fake and intended by no one to bind her to repay the loan. Accordingly, Counterclaimant Jones Utility's offensive motion for summary judgment is due to be granted.

In accordance with the terms of the promissory note, Jones Utility shall submit any claim for attorney's fees within fourteen (14) days from the date of this order. At that time, a separate order will be entered granting judgment to Jones Utility and against Powrzanas on the Note, including calculation of interest and attorneys' fees.

DONE this 3rd day of June, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE