IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MANDY POWRZANAS, )
 )
    Plaintiff, )
 )
v. )    Case No. 2:17-cv-975-GMB
 )
JONES UTILITY AND )
CONTRACTING CO., INC., )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. This matter is before the court on the Motion for Summary Judgment filed by Jones Utility and Contracting Company, Incorporated ("Jones Utility") on August 31, 2018 (Doc. 88), as supplemented on October 26, 2018. Doc. 100. Jones Utility seeks summary judgment on all of Plaintiff Mandy Powrzanas' claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, stemming from her employment with Jones Utility. The court heard oral argument on December 11, 2018, and with briefing complete, the summary judgment motion is ripe for disposition. After careful consideration of the parties' submissions, the applicable law, and the record as a whole, the court finds that Motion for Summary Judgment (Docs. 88 & 100) is due to be granted.

# I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 47 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant meets this burden by presenting evidence showing that there is no dispute of material fact or that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23. There is no requirement "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for

admission at trial, but she may not merely rest on her pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has responded to a motion for summary judgment, the court shall grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 246. His guide is the same standard for directing a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see also Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The evidence supporting a claim

must be "substantial," *Marcus v. St. Paul Fire and Marine Insurance Company*, 651 F.2d 379 (5th Cir. 1981), and a mere scintilla of evidence is not enough to create a genuine issue of fact. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger v. Herrington*, 381 F.3d 1243, 1249–50 (11th Cir. 2004). If the nonmovant's evidence is so thoroughly discredited by the rest of the record evidence that no reasonable jury could accept it, the "court should not adopt that version of the facts for purposes of ruling a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction . . . ."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n.3 (11th Cir. 2009). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.     STATEMENT OF FACTS

The following facts construed in favor of Powrzanas, the nonmovant, are relevant to the motion for summary judgment.

### A.     Family History

Ricky Jones owns and manages Jones Utility. Doc. 90-3.  Ricky Jones is Powrzanas' father. Doc. 66 at 4.  By all accounts, the relationship between Powrzanas and her father has been tumultuous. Doc. 90-1 at 113.  But Powrzanas' mother, Donna Jones, largely mediated any disputes between them. Doc. 90-1 at 26 & 113.  Donna Jones passed away in April 2015 (Doc. 90-1 at 45), and without her as a buffer between Powrzanas and Ricky Jones, the relationship deteriorated. Doc. 90-1 at 48.  Powrzanas testified that Ricky Jones was never a supportive father and that he "cussed [her] every day of [her] life." Doc. 90-1 at 27.

Powrzanas was diagnosed with fibromyalgia in January 2015. Doc. 90-1 at 36.  On November 25, 2015, Ricky Jones introduced Powrzanas and the rest of his family to his new girlfriend, Pat Jones. Doc. 90-1 at 47.  Ricky and Pat Jones married on January 7, 2016. Doc. 90-1 at 45.  Pat and Powrzanas did not get along and were in conflict almost immediately—so much so that Powrzanas believed Pat was on a mission to "shut [her] down." Doc. 90-1 at 42 & 45.  The tension between Powrzanas and Pat Jones increased the friction between Powrzanas and Ricky Jones.

## B.    Employment at Jones Utility

Powrzanas began her employment at Jones Utility in 2007 as a secretary and administrative assistant. Docs. 104-2 at 2 & 90-1 at 18.  Essentially, Powrzanas was in charge of running the office of the company. Doc. 104-1 at 7.  Powrzanas worked in this capacity off and on until she resigned for the final time on March 3, 2016. Doc. 90-1.  It is undisputed that Ricky Jones has a temper, and that Jones' temper sometimes resulted in disagreements with Powrzanas at work. Doc. 90-1.  At times, the arguments between Powrzanas and Ricky Jones occurred almost daily. Doc. 90-1 at 47.  In some instances, the arguments escalated into shouting matches where both parties used profane language. Doc. 90-1 at 48.  During one argument, Ricky Jones punched a flowerpot and a desk and fractured bones in his hand. Docs. 66 at 63 & 117-2 at 10.  On another occasion, Jones waved a gun around and placed it in his mouth threatening to kill himself. Doc. 117-2 at 17.  At times, Ricky Jones has threatened violence against Powrzanas and others. Doc. 66 at 7–8.

Powrzanas resigned from Jones Utility on February 12, 2016. Doc. 90-1 at 47. However, after speaking with her father, she agreed to return to work. Doc. 90-1 at 52.  The long-running dispute came to a volatile crescendo on March 2, 2016, when Powrzanas, Shawna Stewart (Powrzanas' sister), Pat Jones, Ricky Jones, and others went to a work lunch at Buffalo Wild Wings. Doc. 90-1 at 53 & 55.  A dispute ensued because Ricky Jones believed that Powrzanas and Stewart were treating Pat Jones

poorly. Doc. 90-1 at 53–55. The argument spilled out into the parking lot where Ricky Jones threw a box of leftover food at a car and sped away. Doc. 90-1 at 54. Powrzanas testified that she told Stewart and others present that she was quitting her job because she was not going to be humiliated in public. Doc. 90-1 at 54.

Powrzanas testified, and Ricky Jones agreed, that they had conversations about her fibromyalgia while she worked at Jones Utility. Docs. 90-1 at 40 & 117-2 at 11. During fibromyalgia flare-ups, Jones permitted Powrzanas to lie down on a couch in the office and to take breaks during the day as needed. Docs. 88 at 11 & 90-1 at 37. Powrzanas told Ricky Jones that their arguments were exacerbating her fibromyalgia symptoms. Doc. 90-1 at 47. On March 3, 2016, she resigned from her employment with Jones Utility. Doc. 90-1 at 40.

## C.    Social Security Disability Application

In July 2016, Powrzanas filed an application for Social Security Disability Insurance benefits. Doc. 90-1 at 15. In the application, she alleged that she became disabled on March 3, 2016 due to fibromyalgia and other health problems. Doc. 101-1. She further stated that she was in constant pain, was unable to perform household cleaning tasks, struggled with personal hygiene tasks, was unable to independently manage finances, and was unable to do most things that she used to enjoy. Doc. 101-2. She alleged that she stopped working due to her health conditions. Doc. 101-1. In this lawsuit, she claims that the working conditions at Jones Utility were the

7

reason that she became disabled. Doc. 117.

## III.   DISCUSSION

On these facts, Powrzanas brings claims for ADA discrimination and ADA retaliation. Doc. 1 at 4–5.  Jones Utility asserts that summary judgment is due to be granted on Powrzanas' disability discrimination claim because (1) Powrzanas' Social Security Disability application proves that she is not a "qualified individual" under the ADA, (2) she was not denied a "reasonable accommodation" under the ADA, and (3) she was not constructively discharged from her employment.  Jones Utility also seeks summary judgment on the ADA retaliation claim. Doc. 88 at 2.

### A.    Disability Discrimination

Title I of the ADA makes it unlawful for any employer covered under the act to discriminate against a "qualified individual because of [her] disability." 42 U.S.C. § 12112(a).   The act requires covered employers to provide "reasonable accommodations" to employees with disabilities "unless doing so would result in undue hardship to the employer." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) (citing 42 U.S.C. § 12112(b)(5)(A); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996)).  Proof of discrimination under the ADA requires the plaintiff to prove that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Holbrook*, 112 F.3d at 1522 (citing 42 U.S.C. § 12111(8)).

Jones Utility does not dispute that Powrzanas has a disability that fits within the broad definition in the ADA and associated regulations. *See* 42 U.S.C. § 12101; 29 C.F.R. § 1630.2(j). Nevertheless, the court finds that Jones Utility's motion for summary judgment on Powrzanas' ADA disability claim is due to be granted because (1) she is not a qualified individual under the ADA, and (2) Jones Utility did not deny her a reasonable accommodation.[1]

### 1. *Qualified Individual*

Without any dispute as to disability, the court turns to the question of whether Powrzanas is a qualified individual. An individual is qualified under the ADA when she is "able to perform the essential functions of the employment positions that [she] holds or seeks with or without reasonable accommodation." *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000). Where a plaintiff has filed a Social Security disability application prior to filing suit under the ADA, the inquiry into whether she is a qualified individual is complicated by her declaration to the Social Security

---

[1] Jones Utility also argues that it is due summary judgment because Powrzanas resigned her employment and has not established a constructive discharge. The burden of proof for constructive discharge under the ADA is onerous. *E.g.*, *Stedman v. Bizmart, Inc.*, 219 F. Supp. 2d 1212, 1224 (N.D. Ala. 2002). "[A] plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1283–84 (11th Cir. 1999). Even recognizing this strict standard, on the current record the court cannot conclude that no reasonable jury could find that it is utterly intolerable for an employee to be forced to work in conditions where one day the employee's supervisor is wielding a firearm in his office and threatening to kill himself (*see* Doc. 90-1 at 34 & 52–54), and another day his temper flares so severely that he cannot contain his rage in public. Doc. 90-1 at 53–54.

Administration that she is disabled and unable to work. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999).

The Supreme Court addressed this apparent conflict at length in *Cleveland*, a case in which the plaintiff brought suit after suffering a stroke and being fired from her job. After her termination, she applied for and eventually received Social Security Disability Insurance ("SSDI"). *Id.* In a suit against her employer for discrimination under the ADA, her employer filed a motion for summary judgment based on the plaintiff's claim of total disability in her Social Security application. *Id.* at 799. The trial court granted the motion, and the Fifth Circuit affirmed the trial court by applying a rebuttable presumption that any plaintiff who has made a Social Security application is estopped from later asserting that she was a qualified individual under the ADA. *Id.* at 800.

On appeal, the United States Supreme Court overturned the Fifth Circuit, holding that a rebuttable presumption does not arise solely because a plaintiff simultaneously claims SSDI eligibility and that she is a qualified individual under the ADA. *Id.* at 802. Rather, the Supreme Court recognized that there are "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.* at 803. For example, "an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.*

However, the *Cleveland* court was careful to distinguish between the appropriate treatment of "directly conflicting statements about purely factual matters" and the Fifth Circuit's *per se* judicial estoppel of any ADA claim based on a representation of total disability. *Id.* at 802. In rejecting a rebuttable presumption in the latter category of cases, the Supreme Court stated its intention to "leave[] the law related to the former, purely factual, kind of conflict where we found it." *Id.* In the Eleventh Circuit, the law as they found it was that "an ADA plaintiff is estopped from denying the truth of any statements made in her disability application." *Talavera v. Sch. Bd. of Palm Beach County*, 129 F.3d 1214, 1220 (11th Cir. 1997). This rule is based on the principle that it would be inequitable for an ADA plaintiff to "disavow any statements she made in order to obtain [SSDI] benefits." *Id.* The *Cleveland* court discussed this potential inequity at length, finding that a plaintiff in this situation must "proffer a sufficient explanation" for the inconsistency. *Cleveland*, 526 U.S. at 06. If the plaintiff is attempting to defeat summary judgment, the "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807.

Here, Powrzanas alleged in her application for Social Security benefits that she requires help with everyday chores, suffers from extreme exhaustion such that

she struggles with personal hygiene tasks, has a memory so impaired that she cannot handle her finances independently, and struggles to participate in social activities due to her anxiety. Doc. 101-2. She summed up her limitations by claiming that she "can't do anything" and requires "help with everything." Doc. 101-2 at 9. Powrzanas alleged that her disability stems from nine conditions, including fibromyalgia, high blood pressure, bipolar disorder, osteoarthritis, bursitis, panic attack/anxiety, migraine headaches, gout, and Attention-Deficit/Hyperactivity Disorder ("ADHD"). Doc. 101-1 at 6. Under *Cleveland*, the court assumes the veracity of these allegations.[2]

The question then becomes whether a reasonable jury could conclude that Powrzanas, assuming she is exhibiting the symptoms she alleged, nevertheless could perform the essential functions of her job with Jones Utility. It is undisputed that during her employment Powrzanas was the corporate secretary and office manager. Doc. 90-1 at 18. As part of her job duties, she ran the office for the company, which required her to handle bookkeeping duties, to manage accounts payable and

_____

[2] Although Jones Utility argues that *Cleveland* compels a finding that Powrzanas is equitably estopped from asserting any claim under the ADA by virtue of her benefits application, the court has not reached that question. *Cleveland*, 525 U.S. at 807, involved a representation that the plaintiff was "totally disabled" at the time when she claimed in her lawsuit to have been a qualified individual. Jones Utility has not directed the court to such an unqualified admission by Powrzanas. *See, e.g.*, *Talavera*, 129 F.3d at 1220 (rejecting judicial estoppel of ADA claim where plaintiff in benefits application "made no statements indicating that she could not perform her job if she were accorded reasonable accommodation"). While Powrzanas may not be estopped from bringing this claim, she is estopped from denying the truth of the facts alleged in her benefits application. *Id.*

receivable and the company's payroll, to pay payroll taxes, to receive cash and checks, and to make deposits. Doc. 90-1 at 18–24. Under any reasonable interpretation, these functions are considerably more complicated that handling Powrzanas' personal finances. On this record, there is an apparent conflict between Powrzanas' assertions that she "can't do anything"—including personal hygiene tasks and independently managing her personal finances—and her assertions to this court that she could have performed her job with Jones Utility if only allowed a reasonable accommodation.[3] *Cleveland* requires a sufficient explanation of this conflict if Powrzanas is to defeat summary judgment.

In her deposition, Powrzanas was given an opportunity to explain the discrepancy between her ADA claims and her Social Security claim, as *Cleveland* requires:

> Q. Because as I understand it, you have filed a claim for Social Security disability; correct?
>
> A. That's correct.
>
> Q. And in that claim you are saying that you have been unable to work since your resignation from Jones Utility up until February of this year; right?

---

[3] The only accommodation Powrzanas requested was for her father to change his demeanor, resulting in a "less hostile" work environment. Doc. 117 at 6. However, at the time of her sworn application to the Social Security Administration in August 2016 (Doc. 101-2 at 9), Powrzanas had not been working for her father for more than five months. Therefore, she had not been exposed to his allegedly harsh demeanor or the Jones Utility work environment for five months. Doc. 90-1 at 15 & 40. Yet Powrzanas still claimed she was not able to perform personal hygiene tasks, manage her finances, or independently complete most daily tasks. Doc. 101-2.

A.   That's what it says, yes.

Q.   Okay. Are you also seeking to get back wages from Jones Utility during that period of time?

A.   Yes, because if he hadn't have done what he done to me, then I would have been able to continue working, I wouldn't have been sick and needed to file.

Q.   Okay. And so that's how you reconcile your claim for lost wages from Jones Utility and your Social Security claim?

A.   That's correct.

Q.   Is that you blame Jones Utility for your disability?

A.   That's correct.

Q.   Any other reason?

A.   No.

Doc. 90-1 at 92.

As the court interprets this testimony, Powrzanas' position appears to be that Jones Utility caused her disability, so her representations to the Social Security Administration are irrelevant to whether she is a qualified individual under the ADA. This is not enough under *Cleveland*.[4] Powrzanas has not offered a satisfactory explanation for how she could have performed her job even with the accommodation she requested in light of the sworn statements in her SSDI benefits application. The court can only consider her current claims in the context of that application, and no

---

[4] This conclusion leaves aside the question of whether Powrzanas could prove to any reasonable jury through competent evidence that her employment not only exacerbated her fibromyalgia symptoms, but actually caused her to develop fibromyalgia in the first place.

reasonable jury could conclude that a person with the limitations described in Powrzanas' application could perform the wide-ranging functions of her job at Jones Utility. *See, e.g.*, *Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 663 (11th Cir. 2014) (affirming summary judgment on ADA claim because the plaintiff was "estopped from denying the truth of his statements made in furtherance of his social security disability application—that returning to teaching 'would guarantee [his] death,' and that, although his doctors recommended that he teach gifted students, he did not think he could teach any students—and he has not explained the inconsistency between his statement to the SSA and his ADA claim"); *Hayes v. Voestalpine Nortrak, Inc.*, 185 F. Supp. 3d 1314, 1320 (N.D. Ala. 2016) (granting summary judgment on the independent basis that the plaintiff "simply cannot perform the essential functions of a track technician" based on the limitations in his benefits application, and his failure to offer "any evidence or argument to reconcile his SSDI claim of total disability with his ADA failure to accommodate claim").

For these reasons, Powrzanas has not put forth sufficient evidence to create a question of fact as to whether she is a qualified individual under the ADA, and Jones Utility's motion for summary judgment is due to be granted on this basis.

## 2.    *Reasonable Accommodation*

Even if Powrzanas is a qualified individual under the ADA, Jones Utility would be entitled to summary judgment because Powrzanas cannot show that she

was discriminated against because of her disability. Discrimination under the ADA includes the refusal to make a reasonable accommodation that would have allowed the plaintiff to perform her job. *Richardson v. Honda Mfg. of Ala., LLC*, 635 F. Supp. 2d 1261, 1278 (N.D. Ala. 2009). An accommodation is "reasonable" under the ADA if, and only if, "it allows the employee to perform the essential functions of the job." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Typical accommodations include "part-time or modified work schedules," "acquisition or modification of equipment or devices," and similar modifications to working conditions. 42 U.S.C. § 12111. The burden rests solely on the plaintiff to show that a reasonable accommodation exists and that she requested it. *Earl*, 207 F.3d at 1367. If she fails to meet this burden, whether the employer investigated the accommodation or attempted to implement it is of no consequence. *Id.*

As discussed above, Powrzanas has failed to show that she could have performed the essential functions of her job with the accommodation of better treatment by her father—the only accommodation she requested. Doc. 90-1 at 47. For example, she has not shown that a more nurturing work environment would have alleviated her physical ailments such as osteoarthritis, bursitis, or gout. She also has failed to explain how the accommodation would have enabled her to perform her job given that, as discussed above, the court must assume the veracity of the allegations in her SSDI application, in which Powrzanas recounted debilitating symptoms that

persisted more than five months after leaving her employment with Jones Utility. For all practical purposes, that five-month gap served as a test period for the efficacy of the requested accommodation since Powrzanas no longer worked in the allegedly abusive environment her father created at Jones Utility. Yet the record reflects that even then Powrzanas was not able to handle basic tasks without assistance. No reasonable jury could conclude on this record that Powrzanas could have performed the basic functions of her job under these circumstances.

Additionally, while the Eleventh Circuit has not addressed this precise issue, the Eighth Circuit has determined that under the ADA "the obligation to make reasonable accommodation [does not extend] to providing an aggravation-free environment." *Cannice v. Norwest Bank Iowa, N.A.*, 189 F.3d 723, 728 (8th Cir. 1999). The court finds this reasoning to be sound, and is joined in this view by a host of federal courts also finding that a request for a stress-free or non-confrontational work environment is not a reasonable accommodation as a matter of law. *See, e.g., Hargett v. Fla. Atl. Univ. Bd. of Trustees*, 219 F. Supp. 3d 1227, 1243–44 (S.D. Fla. 2016) (collecting cases). Under this line of cases, Powrzanas' reasonable accommodation—for her father to interact with her in a more nurturing and non-confrontational manner—is not a reasonable accommodation under the ADA. Powrzanas' failure to prove that she could have performed her job with her requested accommodation serves as an independent basis for awarding summary

judgment to Jones Utility on this claim.

## B.     Retaliation

As with the claim for ADA discrimination, Jones Utility's motion for summary judgment on Powrzanas' ADA retaliation claim is due to be granted. Under the ADA, an employee is protected against retaliatory discrimination because she "opposed an act or practice made unlawful" by the Act. 42 U.S.C. § 12203. In the Eleventh Circuit, ADA retaliation claims are analyzed under the same framework as Title VII claims. *Rhodes v. Tuscaloosa County Bd. of Educ.*, 935 F. Supp. 2d 1226, 1253 (N.D. Ala. 2013) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)). To establish a *prima facie* case for retaliation under the ADA, a plaintiff must show that (1) she engaged in activity protected by the ADA, (2) she suffered an adverse employment action at the time or after the protected activity took place, and (3) the defendant took an adverse employment action against her because of her protected activity. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1158 (11th Cir 2005).

A plaintiff may show she engaged in statutorily protected conduct by showing that she requested a reasonable accommodation. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). And constructive discharge is a sufficient adverse employment action for retaliation purposes. *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 135 (N.D. Ga. 2006). The third element requires the plaintiff to show

that but for her statutorily protected conduct she would not have faced discrimination. *Gee*, 818 F.3d at 1258.

Jones Utility argues that Powrzanas cannot satisfy this third element because she cannot establish that her engagement in protected activity was the but-for cause of her constructive discharge. Doc. 88 at 9 & 34–36.  Specifically, Jones Utility contends that Powrzanas' allegations that Ricky Jones was an unkind father and that Pat Jones was "an evil stepmother" undercut any claim that Powrzanas would not have suffered retaliation if she had not complained about her health. Doc. 88 at 35.

In her response to the motion for summary judgment, Powrzanas fails to respond to Jones Utility's arguments.  Her response brief contains no more than sporadic references to the retaliation claim, and none of these references is accompanied by any argument, evidence, or citation to authority. *See* Doc. 117 at 6–8 & 30.  Accordingly, Powrzanas has abandoned her retaliation claim.  "The law is well settled in this circuit that a legal claim or argument that has not been briefed is deemed abandoned and that mentioning an issue without providing specific argument in support is not sufficient." *Nzekwe v. Marta*, 2015 WL 12851537, at *6 (N.D. Ga. Aug. 18, 2015).  And passing references are not equivalent to argument. *Hines-Smith v. ADT Sec. Servs., Inc.*, 2007 WL 9711596, at *10 (N.D. Ala. Dec. 4, 2007).  "Abandonment of a claim or issue can also occur when the passing references to it are made in the . . . summary of the argument." *Sapuppo v. Allstate Floridian*

*Ins. Co.*, 739 F.3d 688, 681 (11th Cir. 2014) (internal quotation marks omitted). "A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (internal citation and quotation omitted). And the court can deem a claim abandoned where a party fails to respond to an argument or otherwise address a claim. *Id.*

For example, in *Hines-Smith v. ADT Security Services, Incorporated*, 2007 WL 9711596 at *10 (N.D. Ala. 2007), the district court determined that a plaintiff abandoned a claim where she failed to make any meaningful argument regarding the claim in her opposition to summary judgment. In her response brief, the plaintiff did maintain that she intended to bring a claim of gender discrimination and a claim of race discrimination. *Id.* But apart from "two passing references to the fact that males were not terminated for [comparable conduct]," Hines-Smith did "not state any facts relating to such a claim or make any meaningful argument in support of it." *Id.* The court determined that these passing references did not amount to meaningful argument, and consequently determined that the plaintiff abandoned her claim of gender discrimination. *Id.*

The same is true here. As the *Hines-Smith* plaintiff asserted that she was bringing both a claim of gender discrimination and race discrimination, here Powrzanas asserts that she is bringing a claim for disability discrimination and

retaliation. Doc. 117 at 6. But like the *Hines-Smith* plaintiff, who made two passing references to her gender discrimination claim, Powrzanas' brief includes only passing references to a retaliation claim. Doc. 117 at 6–8 & 30. None of these references is accompanied by meaningful argument or evidentiary support, and one of the references merely appears in the procedural summary of her case. Powrzanas filed a 31-page response to the motion for summary judgment. Her failure to devote any meaningful portion of that response to Jones Utility's arguments for summary judgment on her retaliation claim is fatal. *Cf., e.g.*, *Cole v. U.S. Atty. Gen.*, 712 F.3d 517, 530 (11th Cir. 2013) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("To adequately raise a claim or issue, a party 'must plainly and prominently so indicate,' for instance by 'devot[ing] a discrete section of his argument to' those claims.")). Because Powrzanas' passing references fail to provide specific arguments regarding her retaliation claim or to respond to Jones Utility's defense to the claim, the court finds that the claim is abandoned.[5]

## IV.   CONCLUSION

For these reasons, it is ORDERED that Jones Utility's Motion for Summary Judgment (Docs. 88 & 100) is GRANTED, and all claims stated in Powrzanas' complaint against Jones Utility are DISMISSED with prejudice.

---

[5] Had Powrzanas not abandoned this claim, the court is not convinced that she has introduced sufficient evidence to create a fact dispute as to whether any conduct on the part of Jones Utility or Ricky Jones is causally related to her disability.

DONE and ORDERED on September 11, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE